IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GRADY F. TURNER                                                                    PLAINTIFF

vs.                                     Civil No. 2:16-cv-02106-BAB

NANCY A. BERRYHILL                                                 DEFENDANT
Acting Commissioner, Social Security Administration[1]

## **MEMORANDUM OPINION**

Grady F. Turner ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("The Act").

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 5).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.**      **Background:**

Plaintiff protectively filed his disability application for DIB on October 14, 2011. (ECF No. 11, pp. 14, 173). In his application, Plaintiff alleges being disabled due to amputation of his right

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

leg below the knee. (ECF No. 11, p. 195). Plaintiff alleges an onset date of September 14, 2008. (ECF No. 11, p. 14, 173). This application was denied initially and again upon reconsideration. (ECF No. 11, pp. 69-71).

Thereafter, Plaintiff requested an administrative hearing on his denied applications, and this hearing request was granted. (ECF No. 11, pp. 82-85). After this hearing, on January 31, 2013, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (ECF No. 11, pp. 11-21). Plaintiff subsequently filed an appeal with this Court. *Turner v. Colvin*, No. 2:14-cv-2011, 2014 WL 7069264 (W.D. Ark. 2014). The January 31, 2013, decision of the ALJ was reversed and remanded for failure to properly analyze Plaintiff's subjective complaints in accordance with the requirements of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *Id.*

Plaintiff's second administrative hearing was held on November 3, 2015, in Fort Smith, Arkansas. (ECF No. 11, pp. 578-619). Plaintiff was present and was represented by Matthew Ketcham. *Id.* Plaintiff and VE Larry Seifert testified at this hearing. *Id.* At the time of this hearing, Plaintiff was forty-nine (49) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c). (ECF No. 11, p. 581). As for his level of education, Plaintiff earned a high school diploma. *Id.*

After this hearing, on March 1, 2016, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (ECF No. 11, pp. 543-60). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2011. (ECF No. 11, p. 548, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 14, 2008, his alleged onset date, through his date last insured. (ECF No. 11, p. 548, Finding 2). The ALJ determined Plaintiff had the following severe impairments: amputation of the

2

right leg below the knee and degenerative disc disease. (ECF No. 11, pp. 549, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 11, pp. 549-52, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 11, pp. 552-58, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except that he cannot climb ladders, ropes and scaffolds. He cannot work near unprotected heights and cannot operate foot controls on the right side. The claimant can occasionally climb stairs and ramps, balance, crawl, kneel, stoop and crouch. A cane is required to ambulate.

*Id*.

The ALJ then determined Plaintiff was unable to perform any Past Relevant Work ("PRW"). (ECF No. 11, p. 558, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 11, pp. 615-18). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a radio dispatcher, which has a DOT code of 379.362-010, with approximately twenty-six thousand seven hundred eighty-one (26,781) jobs in the national economy and approximately three hundred fifty (350) jobs in the state of Arkansas, as an information clerk, which has a DOT code of 237.367-022, with approximately ninety thousand eight hundred forty (90,840) jobs in the national economy and approximately seven hundred ten (710) jobs in the state of Arkansas, and as a statistical clerk, which has a DOT code of 216.382-062, with approximately

nineteen thousand nine hundred eight (19,908) jobs in the national economy and approximately five hundred forty-five (545) jobs in the state of Arkansas. (ECF No. 11, pp. 558-59, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from September 14, 2008, through September 30, 2011, the date last insured. (ECF No. 11, p. 559, Finding 11).

On May 6, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on May 9, 2016. (ECF No. 5). This case is now ready for decision.

**2.     Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of

proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *see* 42 U.S.C. §§ 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)(4). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520(a)(4)(v).

**3.    Discussion:**

In his appeal brief, Plaintiff raises the following two arguments for reversal: (1) the ALJ erred in his analysis of Plaintiff's credibility; and (2) the ALJ erred in his determination of Plaintiff's RFC.

B.  **Subjective Complaints and Credibility Analysis**

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529.[3] *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *see Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *see Id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *see Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *see Id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

inconsistencies, and discussing the *Polaski* factors. *see Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain Plaintiff experiences precludes the performance of substantial gainful activity. *see Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

The ALJ properly applied these factors articulated in *Polaski* and gave several good reasons for finding that Plaintiff's subjective complaints were not entirely credible. First, the ALJ noted Plaintiff continued to do mechanic work a few times per month during the relevant period. (ECF No. 11, p. 556). Although this work did not rise to the level of substantial gainful employment, the ALJ is permitted to consider part-time work when assessing a claimant's credibility. *see Curran-Kicksey v. Barnhart*, 315 F.3d 964, 969 (8th Cir. 2003) (holding that even part-time work is inconsistent with a claim of disability). Second, the ALJ noted Plaintiff's complaints during the relevant period could be treated conservatively by adjusting his prosthetic, and with Tylenol and Lyrica. (ECF No. 11, pp 491-92, 557). *see Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Plaintiff even testified that while non-narcotic pain medication does not entirely eliminate his pain, he is unwilling to take more powerful narcotic-based pain medication. (ECF No. 11, pp. 38-39). Third, the ALJ noted that Plaintiff did not regularly seek treatment for his impairments after proper adjustment of his prosthetic leg, and was cleared to work a light duty sit-down job by Dr. Callaway on February 22, 2010. (ECF No. 11, pp. 493, 556). Finally, the ALJ examined Plaintiff's various activities and activities of daily living. (ECF No. 11, pp. 556-57). He noted Plaintiff could go into the deer woods with his brother, that he could walk two blocks before

needing to rest, manage his own personal care, went outside frequently, could walk and drive a car, shopped by computer and in stores, and could do indoor household chores at a slow pace. (ECF No. 11, pp. 556-557).

I find substantial evidence supports the ALJ's credibility assessment and because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, I defer to the ALJ's credibility determination. *see Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

### D. RFC and Medical Opinions

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff argues the ALJ did not account for Plaintiff's need for frequent breaks to rest and

adjust his prosthetic. The record for the relevant period does not contain medical evidence Plaintiff required frequent breaks to rest and adjust his prosthetic. Treatment records from Dr. Callaway on February 22, 2010, state, "I think he is perfectly capable of doing some light duty, especially if it is sedentary work." (ECF No. 11, p. 493). Plaintiff reported phantom pain on April 14, 2010 and Dr. Callaway changed his medication from Gabapentin to Lyrica. (ECF No. 11, p. 492). In his treatment notes Dr. Callaway stated: "He is getting used to his prosthesis and has been up and around and fairly active. He states he feels better than he has in a couple of years, since for much of that time he was limited in what he could do prior to his amputation. I think all-in all he is fairly stable." (ECF No. 11, p. 491). Plaintiff's only complaints on August 24, 2011, and September 19, 2011, were of a rash. (ECF No. 11, pp. 489-90). Adjustment notes from Plaintiff's prosthetic provider note he went through multiple adjustments because his leg was shrinking due to weight loss. (ECF No. 11, pp. 501-07). The notes indicate that on March 19, 2010, Plaintiff "had a lot of distal changes," which prevented him from achieving a proper fit with his prosthetic. (ECF No. 11, p. 502). He was advised to get a sock replacement. *Id.* Plaintiff's next complaint regarding the socket fit was on October 11, 2010, which was attributed to weight loss. (ECF No. 11, p. 503). Plaintiff was provided with a skin reliever gel and advised to return on an as needed basis. *Id.* Plaintiff did not complain of a socket problem again until November 8, 2011, when it was noted Plaintiff had continued to shrink, and he was provided with a new liner for a better fit. (ECF No. 11, p. 507). None of Plaintiff's treatment providers during the relevant period, consultative examiners, or non-examining consultants articulated any need for Plaintiff to have frequent breaks. The only evidence Plaintiff must regularly take a break to adjust his prosthesis comes from Plaintiff's own hearing testimony. (ECF No. 11, pp. 42-45). As discussed above, Plaintiff also testified that while he suffers some

phantom pain and that his non-narcotic pain medication does not entirely eliminate his pain, he refuses to take narcotic-based pain medication. (ECF No. 11, pp. 38-39). For the reasons already stated herein, the ALJ properly determined Plaintiff's own subjective complaints and testimony were less than fully credible.

Dr. Honghiran, an orthopedic surgeon, conducted a consultative examination of Plaintiff on October 19, 2012. (ECF No. 11, pp. 529-36). Plaintiff argues that the ALJ improperly evaluated the opinion of Dr. Honghiran who opined Plaintiff could not sit for more than four hours in a typical workday. In some areas, the ALJ determined Plaintiff was more limited than assessed by Dr. Honghiran. For example, the ALJ determined Plaintiff could only occasionally balance, crawl, kneel, stoop, and crouch, which were work activities Dr. Honghiran opined Plaintiff could perform frequently. (ECF No. 11, pp. 534, 552). Dr. Honghiran also opined Plaintiff could occasionally operate foot controls on the right side, a task which the ALJ determined Plaintiff would not be able to perform day in and day out in a competitive work environment. (ECF No. 11, pp. 533, 552). Dr. Honghiran's opinion, that Plaintiff can only sit for two hours at one time and a total of four hours in an eight hour workday, is unsupported by any of the other evidence for the relevant period from Plaintiff's treatment providers or by the opinions of the other consultants. Indeed, Dr. Honghiran's own opinion is itself internally inconsistent in this regard because although his Medical Source Statement indicates Plaintiff was incapable of work at even the sedentary exertion level, Dr. Honghiran's accompanying letter stated that he recommended Plaintiff attend a vocational school and acquire new skills "because he can work without having to walk or climb." (ECF No. 11, p. 530).

Generally, a treating physician's opinion is given more weight than other sources in a

disability proceeding. 20 C.F.R. § 416.927(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 416.927(c)(2). In the present case, the ALJ was permitted to give Dr. Honghiran's Medical Source Statement less than controlling weight because it was inconsistent with Dr. Honghiran's recommendation that Plaintiff attend a vocational school and that he could work without having to walk or climb. (ECF No. 11, p. 530). *see Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) ("While the ALJ also found Dr. Prihoda's opinion to be internally inconsistent, we need not comment on that, as an appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion").

The ALJ's RFC determination must be based on *all* relevant evidence in the record, not simply one consulting physician's opinion, despite the weight the ALJ affords the opinion. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). I note that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of many treating physicians, specialists, examining consultants, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions

of various treating and examining physicians") (citations omitted); *Prosch v. Apfel*, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the foregoing, I find the ALJ did not commit error by giving Dr. Honghiran's opinion less than controlling weight.

I note that in formulating Plaintiff's RFC, the ALJ fully summarized all of Plaintiff's medical records and separately discussed each of his alleged impairments. Based on the ALJ's synopsis of Plaintiff's medical records and discussion of each of his alleged impairments, I conclude that the ALJ properly considered all of Plaintiff's impairments individually and in combination, even those which the ALJ determined were non-severe. *see Martise v. Astrue,* 641 F.3d 909, 924 (8th Cir. 2011). Based on examination of the record as a whole, I find substantial evidence supports the ALJ's RFC determination.

**4.     Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 16th day of May 2017.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE